**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| SAMUEL MAMULA | CIVIL ACTION |
| VERSUS | 3:26-34-SDD-SDJ |
| ALERE TOXICOLOGY, INC., et al. | |

# RULING

This matter is before the Court on the *Motions to Dismiss for Failure to State a Claim* filed by Defendants Calcasieu Urgent Care LLC ("Calcasieu")[1] and AmeriGas Propane, Inc. ("AmeriGas")[2] (collectively "Defendants"), respectively. Plaintiff, Samuel Mamula ("Plaintiff"), has not filed an opposition. The Court has carefully considered the Defendants' arguments and applicable law and is prepared to rule. For the following reasons, the *Motion* filed by AmeriGas shall be GRANTED with prejudice, and the *Motion* filed by Calcasieu DENIED.

## I. FACTUAL ALLEGATIONS & PROCEDURAL BACKGROUND

Plaintiff, a former employee of AmeriGas, brings this lawsuit following his termination for what he alleges was a "false positive result" on a mandatory drug screening.[3] The relevant factual allegations, taken as true, are as follows.

On April 23, 2025, Plaintiff received notice that he had been randomly selected for a drug test under AmeriGas's screening policy for safety sensitive positions, which is required by Department of Transportation ("DOT") regulations.[4] That same day, Plaintiff

[1] Rec. Doc. No. 9.
[2] Rec. Doc. No. 10.
[3] Rec. Doc. No. 1-1, p. 3.
[4] *Id.* at ¶¶ 3, 7.

reported to Fast Pace Health, Calcasieu's urgent care facility in Baker, Louisiana, for collection of a urine sample.[5] The collected sample was then transported via Federal Express ("FedEx") from Calcasieu's urgent care facility to an Alere Toxicology Inc. ("Alere") testing center.[6] Alere subsequently informed AmeriGas that Plaintiff's urine sample had tested positive for an unspecified drug.[7] AmeriGas notified Plaintiff of the unfavorable determination on May 13, 2025, and terminated his employment that same day.[8]

Following his termination, Plaintiff underwent a voluntary "hair follicle drug test" at ARCpoint Labs in Baton Rouge, which he "passed" on May 20, 2025.[9] On December 1, 2025, Plaintiff filed a *Petition for Damages* in Louisiana's 19th Judicial District Court alleging wrongful termination against AmeriGas, in addition to state law tort claims against Calcasieu and Alere.[10] Plaintiff also asserts a breach of contract claim against Alere. On January 9, 2026, Defendants removed to this Court, asserting federal diversity jurisdiction under 28 U.S.C. § 1332.[11] Two weeks later, on January 23, 2026, Calcasieu and AmeriGas filed their respective motions to dismiss.[12] Plaintiff has not filed an opposition or response to Defendants' motions, and the time for doing so has passed.[13] As such, the Court considers the motions unopposed.[14]

---

[5] *Id.* at ¶ 9.
[6] *Id.* at ¶ 10.
[7] *Id.* at ¶ 11.
[8] *Id.* at ¶ 12.
[9] *Id.* at ¶ 13.
[10] Rec. Doc. No. 1-1.
[11] Rec. Doc. No. 1.
[12] Rec. Doc. Nos. 9, 10.
[13] M.D. La. Local Rule 7(f).
[14] Generally, "[f]ailure of a party to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of that issue at the district court level." *Arkansas v. Wilmington Tr. Nat'l Assoc.*, 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 (5th Cir. 2006)). But, "[a]though failure to respond to a motion will be considered a statement of no opposition, [the] court is not required to grant every unopposed motion." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350,

## II. LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[15] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[16] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[17] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[18]

A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[19] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has

---

356 (5th Cir. 1993). This is particularly true for dispositive motions, such as motions to dismiss, where the Court must still evaluate whether dismissal is warranted. *See Hazlett v. St. Tammany Parish Sheriff's Office*, 2018 WL 4386104, at *1, n.1 (E.D. La. Sept. 13, 2018) (considering merits of motion to dismiss despite plaintiff's failure to timely file an opposition thereto and explaining that "[t]his circuit frowns upon a dismissal with prejudice based solely on a litigant's failure to oppose a motion.").

[15] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

[16] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[17] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (internal citation omitted).

[18] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and brackets omitted) (hereinafter "*Twombly*").

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (internal citations omitted) (hereinafter "*Iqbal*").

[20] *Id.* at 663.

acted unlawfully."[21] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[22] Further, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[23]

## III. LAW & ANALYSIS

### A. *Calcasieu*

Plaintiff's claim against Calcasieu is premised on a breach of its duty to accurately perform random drug tests by "mishandling [Plaintiff's] urine sample, mislabeling the urine sample, and/or failing to follow required protocols."[24] Invoking the protections of the Louisiana Medical Malpractice Act ("LMMA"), Calcasieu argues Plaintiff's claim, which sounds in negligence, is premature to the extent the statute provides, "[a]ll malpractice claims against health care providers … shall be reviewed by a medical review panel."[25] Indeed, until such review has taken place, the LMMA instructs that "[n]o actions against a health care provider … may be commenced in any court."[26] Calcasieu contends that because Plaintiff's claim arises from the collection of his urine sample for an employment drug screening, it alleges "professional medical negligence" and, thus, "conduct fall[ing] within the scope of [the] malpractice" statute.[27]

The LMMA defines "malpractice," in relevant part, as "any unintentional tort or any breach of contract based on *health care* or *professional services* rendered … by a

---

[21] *Iqbal*, 556 U.S. at 678.
[22] *Taha v. William Marsh Rice University*, 2012 WL 1576099, at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[23] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[24] Rec. Doc. No. 1-1, ¶ 15.
[25] Rec. Doc. No. 9-1, p. 3 (citing La. R.S. 40.1231.8(A)(1)(a) (cleaned up).
[26] *Id.* (citing La. R.S. 40:1231.8(B)(1)(a)(i) (cleaned up)).
[27] *Id.* (cleaned up).

healthcare provider, to a patient."[28] Accordingly, Calcasieu points to the LMMA's definition of *health care*, which encompasses, "any act, treatment, administration, service, or care related to policies and procedures and the administration thereof, staffing, [and] custodial services by licensed or certified staff … performed or furnished … by any health care provider … on behalf of a patient during the patient's medical care, treatment, or confinement."[29] It argues that the "testing, handing, and labeling of the urine sample would be considered acts or services that Calcasieu … performed on behalf of [Plaintiff] during his medical care and pre-employment examination."[30] Thus, as a "qualified healthcare provider entitled to the rights and benefits conferred by the LMMA," Calcasieu maintains that Plaintiff's *Petition* alleges medical malpractice and should be dismissed as premature for his failure to exhaust the mandatory medical review panel process.

At the outset, it is clear to the Court that Calcasieu is a qualified health care provider under the LMMA and, in collecting a urine sample for purposes of employment drug screening, performs "professional services."[31] It is well-settled, however, that for an act of malpractice to occur in the rendition of professional services, "the patient must still be in the process of receiving 'health care' from the provider when the negligent act occur[ed]."[32] This means that "the act or omission must have occurred during the patient's *medical care*, *treatment*, *or confinement*."[33] That is not the case here.

Instructively, in *Price v. City of Bossier City*, the Louisiana Supreme Court concluded that an employee does not receive "medical care" when, at the direction of

[28] La. R.S. 40:1231.1(A)(1)(13) (emphasis added).
[29] Rec. Doc. No. 9-1 p. 4.
[30] *Id.* at p. 5.
[31] The LMMA defines "health care provider" to include a "limited liability company … licensed or certified by this state … to provide health care or professional services." La. R.S. 40:1231.1(A)(10).
[32] *Price v. City of Bossier City*, 693 So. 2d 1169, 1172 (La. 1997).
[33] *Id.* at 1173 (emphasis added).

their employer, they are tested for the presence of drugs—a condition of which the employee presumably is already aware.[34] Likewise, an employee does not receive "treatment" under such circumstances; the *Price* Court carefully distinguished "the situation where a doctor directs a patient to go to the lab for tests relating to [a] medical condition" from that same direction at the behest of an employer that wants to ensure an employee does not test positive for drug use.[35] This is true even where the specimen needed for the drug screen is taken alongside the provision of health care, such as during a routine physical or treatment for a medical condition, so long as the employee is not confined to the medical facility at the time.[36] Lastly, Plaintiff was in no way confined to Calcasieu's urgent care facility when the urine sample was collected. Because Plaintiff was not in the process of receiving medical care, was not being treated for any condition, and was not confined at the time of the urine sample's collection, he was not receiving *health care*, as that term is defined in the LMMA; nor was he a "patient" of Calcasieu.[37]

Calcasieu's argument that the reasoning of *Price* is inapplicable because the LMMA's definition of "health care" has been expanded in the twenty-nine (29) years since that decision is unpersuasive. To be sure, the LMMA's definition of "health care" at the time *Price* was decided did not contain its present language concerning "administration, service, or care, related to policies and procedures and the administration thereof,

[34] *Price*, 693 So. 2d at 1173. Nothing in the *Petition* suggests Plaintiff was relying upon Calcasieu to diagnose a physical or medical condition of which he was not aware; in other words, the drug test was not a part of any medical treatment regimen.
[35] *Id.*
[36] *Hensley v. Redi-Med of Mandeville*, 2009 WL 2914185, at *4 (E.D. La. Sept. 10, 2009) ("Plaintiff's drug screen was not related to the substance of his physical, but rather it was a mechanism by which the employer could ensure that a prospective employee did not test positive for drug use.").
[37] The LMMA defines the term "patient," in relevant part, to mean "a natural person … who receives … health care from a licensed health care provider, under contract." La. R.S. 40:1231.1(A)(15).

including custodial services by licensed staff."[38] That said, whether an act is done in relation to clinical care or in an administrative capacity, the LMMA's requirement that it be performed "on behalf of a patient during the patient's medical care, treatment, or confinement [(i.e., health care)]," has remained unchanged.[39] The collection and handling of Plaintiff's urine sample by Calcasieu does not fit neatly into the LMMA's definition of *health care* or a covered *professional service*.

For that reason, Plaintiff's claim does not sound in medical malpractice and Calcasieu's *Motion to Dismiss* on prematurity grounds is DENIED.

B. *AmeriGas*

In addition to the "false positive drug test," Plaintiff alleges a series of failures by AmeriGas which he contends amounted to a violation of his employee rights and wrongful termination, namely the failure to: (1) provide written notice of the random drug screening procedures; (2) obtain signed acknowledgement of his understanding and consent; (3) notify him of the consequences for failure to comply with those procedures; (4) use a SAMHSA certified collection and screening facilities and ensure proper chain of custody procedures; (5) clearly define disciplinary actions for positive results; (6) provide a procedure for disputing results, offer rehabilitation services and/or return to work programs where feasible; (7) ensure compliance with DOT regulations, and to ensure its contracts with Alere and Calcasieu remained in compliance therewith; (8) use a random selection system that is unpredictable and incapable of influence by supervisors; (9) inform Plaintiff that he may request split sample testing; and (10) provide notice and an

---

[38] La. R.S. 40:1231.1(A)(9).
[39] *See Price*, 693 So.2d at 1172 (stating definition of "health care" under LMMA in 1997).

opportunity to challenge the drug screen results.[40] AmeriGas seeks dismissal of Plaintiff's claims arguing "Louisiana's drug testing statute does not provide a private cause of action for wrongful termination for a failed drug test or for a termination following performance of a drug test in violation of the statute."[41] It maintains that because Plaintiff was as an at-will employee, it could terminate him "at any time for any reason" without it incurring liability for the discharge.[42]

While it is unclear whether Plaintiff is pursuing a negligent discharge claim against AmeriGas for its failure to confirm the accuracy of the drug test underlying his termination, in addition to stating a wrongful termination claim for its alleged violations of procedures set forth in Louisiana's Drug Testing Statute,[43] neither theory can succeed. To start, Plaintiff was an at-will employee[44] subject to termination "for any reason—good, bad, or indifferent—or for no reason at all."[45] If an employer is at liberty to discharge its employee for no reason, it is "equally at liberty to discharge [him] for a reason based on incorrect information, even if that information was carelessly gathered."[46] For that reason, the Louisiana Supreme Court and federal courts in this circuit have frequently held that "an employer cannot be held directly liable under a negligence theory for terminating an employee based on incorrect results of a negligently conducted [or processed] drug

---

[40] Rec. Doc. No. 1-1, ¶¶ 26-35.
[41] Rec. Doc. No. 10-1, p. 11.
[42] *Id.* at p. 11, n.1.
[43] La. R.S 49:1001-1021.
[44] Plaintiff states that he was a "longtime employee" of AmeriGas. Rec. Doc. No. 1-1, ¶ 6. "Louisiana law recognizes a presumption that employment is 'at will' unless there is a specific statutory requirement or the relationship has been altered by express contract limiting the conditions of an employee's termination." *Short v. Gusman*, 2019 WL 1326645, at *6 (E.D. La. Mar. 25, 2019).
[45] *Scott v. Crosby Energy Servs.*, 2020 WL 1139854, at *6 (E.D. La. Mar. 9, 2020) (citing La. Civ. Code art. 2747).
[46] *Johnson v. Delchamps*, 897 F.2d 808, 811 (5th Cir. 1990).

test."[47] AmeriGas is therefore shieled by Louisiana's at-will employment doctrine from tort liability for terminating Plaintiff's employment based upon a false positive drug test.

As to Plaintiff's alleged procedural errors, Louisiana's statutory scheme governing random drug testing "does not create a cause of action for wrongful termination."[48] Courts have therefore routinely held that "Louisiana's Drug Testing Statute does not subject an employer to liability for wrongful termination of an at-will employee for failure to follow the statutory requirements contained therein."[49] While La. R.S. 49:1012 "addresses an employee's right to confidentiality … with regard to all information received through the employer's drug testing program and sets forth the circumstances under which an employee may assert a claim for defamation of character, libel slander, or damage to reputation or privacy," the section does not address an employee's right to bring an action for wrongful termination.[50] Further, while La. R.S. 49:1005(A) deals with an employer's conduct when mandatory or discretionary consequences will be rendered to an employee as a result of drug-testing, the statute does not provide that an employer's failure to follow the requirements set forth therein will subject it to liability for wrongful termination.[51]

For the foregoing reasons, Plaintiff fails to state a claim against AmeriGas for either negligent discharge or wrongful termination. Accordingly, AmeriGas' *Motion to Dismiss* is GRANTED WITH PREJUDICE.

---

[47] *Scott*, 2020 WL 1139854, at *6 (citing *Herbert v. Placid Ref. Co.*, 564 So. 2d 371, 373 (La. App. 1st Cir. 1990) (cleaned up)).
[48] *Jackson v. Hiller Companies, Inc.*, 2021 WL 5113162, at *6 (E.D. La. Nov. 3, 2021) (citing *Short v. Gusman*, 806 F. Appx. 264 (5th Cir. 2020) (dismissing the plaintiff's claim under the Louisiana Drug Testing Statute because the statute did not create a cause of action).
[49] *Narcisse v. Turner Indus. Group, LLC*, 2012 WL 1565293, at *3 (E.D La. Apr. 30, 2012) (citing *Sanchez v. Georgia Gulf Corp.*, 860 So. 2d 277, 282-83 (La. App. 1st Cir. 2003)); *Tilson v. DISA, Inc.*, 2018 WL 3132607, at *2 (M.D. La. June 26, 2018).
[50] *Sanchez*, 860 So. 2d 277, 282-83.
[51] *Id*. at 283.

## IV. CONCLUSION

For the foregoing reasons, the *Motion to Dismiss* filed by Calcasieu[52] is DENIED. The *Motion to Dismiss* filed by AmeriGas[53] is GRANTED and Plaintiff's claims against AmeriGas are DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 28 day of August, 2026.

Shelly D. Dick

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[52] Rec. Doc. No. 9.
[53] Rec. Doc. No. 10.